UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-11596-RWZ

ARQUIDAMIA MATEO

v.

PGA TOUR, *et al.*

ORDER
February 24, 2010

ZOBEL, D.J.

Plaintiff Arquidamia Mateo brings this suit to recover for injuries she received

while traveling on a utility cart during the 2004 Deutsche Bank Golf Tournament held in

Norton, Massachusetts, where she was employed as a temporary food service worker.

Plaintiff has sued several entities which sponsored, operated, and owned the golf

course on which the tour took place.  Five of those entities now move for summary

judgment.  For the reasons discussed below, the five moving defendants' motions are

allowed.  Plaintiff's actions against the driver of the cart and his employer remain.

I.      **Facts**

        A.      **The Accident**

        Plaintiff, a temporary food worker for NESCO Service Company ("NESCO"), was

hired to serve food at the tournament.  On the day of the tournament, she was walking

with two other employees to the location on the golf course where she would be

working.  Along the way, she and her co-workers encountered two employees of

Restaurant Associates Inc. ("Restaurant Associates"), a catering company, driving in a

utility cart.  The cart had two seats in front and a flat cargo bed in the back.  After a brief conversation with the driver, Robert Consla (an employee of Restaurant Associates), the three women climbed in the rear cargo bed of the utility cart.  They sat on the back edge of the utility cart facing outward in the opposite direction of which the cart was traveling.  The cart proceeded from a paved path to an unpaved dirt-and-gravel path, a cut-through from hole three to hole seven on the course.

While traversing this unpaved path, the rear part of the flat cargo section lifted up, in the words of one witness, "like a dumptruck," and the three women slid off the cart to the ground.  See Docket # 50-10, Statement of Material Facts by Defendants, Deposition of Irma Tejeda, Ex. 9, Vol. II at 37.  There is conflicting witness testimony whether the cart hit a rock or hole, or whether the latch on the cargo broke, causing the cargo section to lift up.  Plaintiff hit her head on a rock, causing traumatic brain injury and continuing neurological problems for which she now seeks damages.

**B.   Management of the Facility During the Tournament**

The tournament was held on September 4, 2004, at the Tournament Players Club of Boston at Great Woods in Norton, Massachusetts ("TPC Boston"), and was sponsored by Deutsche Bank[1] and the PGA Tour.  TPC Boston is owned by TPC of Massachusetts, Inc. ("TPC Massachusetts"), and is also a member of TPC Network, a professional association of private membership golf properties.  TPC Boston owns the golf course, while TPC Massachusetts operates it.

A separate entity, IMG Worldwide, Inc. ("IMG"), was hired by the Tiger Woods

---

[1] Deutsche Bank settled with plaintiff and is no longer in the case.

Charity Event Corp., also a sponsor, to manage and operate the tournament.  IMG

entered into a "Tournament Facilities Agreement" with TPC which governed IMG's use

of the facility.  Under this agreement, IMG had "exclusive access" to the facility and

"complete and exclusive control regarding play or practice" at the facility.  See

Tournament Facilities Agreement ¶ 3.1(b).[2]

As part of its management of the tournament, IMG hired Restaurant Associates

as an independent contractor to provide catering services.  Restaurant Associates in

turn subcontracted with NESCO to provide temporary catering employees.  On the day

of the accident, plaintiff was employed by NESCO.  The utility cart involved in the

accident was obtained by IMG for the tournament through a lease agreement with a

third-party, Club Car, and provided by IMG to vendors, including Restaurant

Associates, to use.

## C.    Pending Motions

Plaintiff claims against defendants PGA Tour, TPC Network, TPC

Massachusetts, TPC Boston, IMG,[3] Restaurant Associates,[4] Compass Group USA, Inc.

---

[2]  The Facilities Agreement states, in pertinent part:

IMG shall have exclusive access to the Golf Facility as set forth herein for
Tournament purposes throughout Tournament Week.  TPC acknowledges that
IMG shall have complete and exclusive control regarding play or practice at the
Golf Facility during Tournament Week, including, without limitation, all times of
play or practice.

[3] Defendants PGA Tour, TPC Network, TPC Massachusetts, and TPC of Boston
have filed a cross-claim against defendant IMG for contractual indemnification.

[4] Restaurant Associates has brought a third-party action against NESCO for
contractual indemnification.

(a wholly-owned subsidiary corporation of Restaurant Associates), and various unnamed agents of these defendants for the following: (1) negligent maintenance; (2) negligent hiring; (3) negligent supervision; (4) negligent entrustment; and (5) vicarious liability.

Five defendants now seek summary judgment: PGA Tour, TPC Network, TPC Massachusetts, TPC Boston (Docket # 48); and IMG (Docket # 59).

## II.   Discussion

### A.   Legal Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);  Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

In general, summary judgment for the defendant may be granted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B.   PGA Tour, TPC Network, TPC Massachusetts, TPC Boston's Motion for Summary Judgment (Docket # 48)

Plaintiff contends that TPC of Boston, as the owner of the golf course, and TPC

4

Massachusetts, as the operator of the course, along with PGA Tour and TPC Network, as sponsors of the tournament, were negligent: (1) in failing to exercise reasonable care in the maintenance, operation, and inspection of the golf course; (2) in hiring agents (specifically the driver of the cart, Robert Consla); (3) in supervising agents; (4) in entrusting the utility cart to agents (specifically, Consla); and (5) are vicariously liable for the actions of Consla, and his employer, Restaurant Associates, under the doctrine of respondeat superior.

### 1.   Direct Negligence

#### a.   Negligent Maintenance of the Golf Course — TPC Boston

In general, landowners are only responsible for negligence with respect to their property under the doctrine of premises liability.  Landowners have a duty to ensure that their premises are free from defects and kept in a "reasonably safe condition." Mounsey v. Ellard, 363 Mass. 693, 708 (1973).  They also have a duty to warn invitees of any danger.  Oliveri v. Massachusetts Bay Transp. Authority, 363 Mass. 165, 167 (1973).

In order to prevail on an action for premises liability, plaintiff must demonstrate that (1) TPC Boston failed "to use ordinary care to ensure that the premises [we]re reasonably safe for invitees in the light of the totality of the existing circumstances," Lemovitz v. Pine Ridge Realty Corp., 887 F. Supp. 16, 18 (D. Maine 1995) (internal citations omitted); and (2) plaintiff's injury was proximately caused by traversing the unsafe path.

Plaintiff contends that the golf course was not reasonably safe for invitees in light of the defective condition of the unpaved path.  She does not point to a specific defect, but rather asserts that "the entire cut-through was unsuitable for travel."  Docket # 68, Pl.'s Mem. of Law in Support of Her Objection to Defs.' Mot. For Summ. Judgment at 12.  This contention is unsupported by the record.  First, the existence of an unpaved path on the course is not, in and of itself, a defect in the property, and aside from the fact of the injury, plaintiff has adduced no evidence of a defect in the path.[5]

Second, plaintiff cannot demonstrate proximate cause.  A showing of proximate cause "'demand[s] ... some direct relation between the injury asserted and the injurious conduct alleged.'"  Rectrix Aerodome Centers, Inc. v. Barnstable Municipal Airport Com'n, 632 F. Supp.2d 120, 128 (D. Mass. 2009) (quoting Bridge v. Phoenix Bond & Indem. Co., ___ U.S. ___, 128 S.Ct. 2131, 2142 (2008)).

Even assuming, arguendo, that plaintiff could prove that the unpaved path was defective, she has offered no evidence that it was the condition of the path that caused plaintiff's injury.  Rather, plaintiff contends the jury can infer from the fact that the injury occurred while on the unpaved path that the women were ejected because of the path's

---

[5] To the contrary, aside from plaintiff's testimony, there is consistent testimony that the cart did not strike a rock, hole, or bump in the path preceding the accident.  See Docket # 50-10, Statement of Material Facts by Defendants, Deposition of Irma Tejeda, Ex. 9, Vol. II at 40 (testified that she did not recall whether the accident was preceded by striking a bump or rock); Docket # 50-11, Deposition of Belkis Martinez, Ex. 10, at 71-72 (testified that she did not feel the cart hit a hole or a bump immediately before the accident); and Docket # 50-13, Deposition of Robert Consla, Ex. 12, at 186 (testified that he had no recollection of striking a rock or hole at the moment of the accident); Docket # 50-12, Deposition of Patrick Leahy, Ex. 11, at 119 (testified that he did not recall hitting a bump when the accident occurred).

condition.  That is, the jury can infer — not from the fact of the accident — but from the

facts surrounding the manner in which the injury happened, that the injury was caused

by Consla's driving the cart over a bumpy path.[6]  This modified res ipsa loquitur theory

is unsupported by both the law and the evidence.  Plaintiff notes that the Rockwell case

holds that expert testimony is not necessary to establish causation.  See Rockwell v.

Hillcrest Country Club, 25 Mich. App. 276, 181 N.W. 2d 290 (1970).  Nevertheless,

some quantum of evidence establishing causation is required.

Finally, a landowner has a duty to warn invitees of reasonably foreseeable

danger.  See Oliveri v. Massachusetts Bay Transp. Authority, 363 Mass. 165, 167

(1973) (a landowner must "at least [] warn [invitees] of any dangers that might arise

from such use, which are not likely to be known to them, and of which the defendant

knows or ought to know.")  Here, however, there is no evidence of an unsafe or

defective condition on the premises.  Nor is there any evidence that any such defect,

assuming there was one, was reasonably foreseeable, or that defendants knew or

should have known of such condition.

> **b.    Negligent Maintenance of the Golf Course — Remaining
> Defendants (PGA Tour, TPC Network, and TPC Massachusetts)**

---

[6] This theory is similar to a res ipsa loquitur theory.  However, plaintiff acknowledges that she cannot prevail on a res ipsa theory.  To prevail on such theory, plaintiff must demonstrate that "the mere occurrence of the accident shows negligence as a cause."  Enrich v. Windmere Corp., 416 Mass. 83, 88 (1993).  Here, there is no evidence that this type of accident could only be caused by a defect in the path. Rather, the injury could very well have been caused by several other conditions, such as the failure to latch the cart's cargo bed, a defect in the cart or the latch itself, or negligence in using the cargo section of the cart to carry persons instead of cargo. Accordingly, plaintiff cannot, and does not, rely on a res ipsa loquitur theory.

Plaintiff's claims for negligent maintenance are premised on her theory that the PGA Tour and TPC Network defendants retained control over the course and thereby responsibility for maintaining, implementing, and enforcing safety measures contained in the policy manual and otherwise.  Moreover, because these defendants retained the ability to bring such conditions to the attention of any other entity operating on the property during the time of the tournament, they had responsibility for identifying and rectifying any safety hazards found during the tournament.  For example, as evidence that the PGA Tour retained control over the course, plaintiff points specifically to the fact that (1) incident reports regarding the accident were prepared on PGA Tour forms; and (2) the PGA Tour logo was visible in various locations on the golf course, including on the entrance.

Plaintiff's argument is unavailing.  First, as noted above, there is no evidence that the path was not reasonably maintained, nor that any alleged defect caused plaintiff's injury.  Second, there is no evidence that these defendants retained control over the tournament or the course.  The forms and logos do not establish control.

### c.    Negligent Maintenance of the Utility Cart

Insofar as plaintiff also contends that the utility cart was itself defective and/or that defendants were negligent in maintaining the utility cart, this argument is without support in the record.  There is simply no evidence that these defendants (PGA Tour, TPC Network, TPC Boston, and TPC Massachusetts) provided the cart to Consla or that they were in any way responsible for maintaining it.

### d.    Negligent Hiring, Supervision, and Entrustment

Next, plaintiff contends that TPC of Boston, as the owner of the golf course, and TPC Massachusetts, as the operator of the course, along with PGA Tour and TPC Network, as sponsors of the tournament, were negligent in hiring, supervising, and entrusting utility carts to their agents, namely, Restaurant Associates.

But none of these defendants directly hired Consla, an employee of Restaurant Associates, or controlled his hiring.

Plaintiff also argues that defendants are liable for the negligent supervision of their independent contractors, namely, Restaurant Associates.

In general, a landowner does not have a duty to ensure that an independent contractor performs its work in a safe manner.  Such a duty may arise under a "retained control" theory, i.e., where the landowner (1) retained some control over the work to be performed by the independent contractor; (2) did not exercise reasonable care in overseeing the independent contractor's activities; and (3) the injury sustained by the plaintiff is proximately caused by the breach of that duty.  See Chiao-Yun Ku v. Town of Framingham, 53 Mass. App. Ct. 727, 730 (2002) (citing Restatement (Second) of Torts § 414 (1965)).  By contrast, a landowner who relinquishes control of the premises to an independent contractor is not liable for injuries sustained by employees of the independent contractor.

The test is whether the employer "retains the right to control the work in any of its aspects, including the right to initiate and maintain safety measures and programs;" if so, "[the employer] must exercise that control with reasonable care for the safety of others, and [] is liable for damages caused by [its] failure to do so."  See Corsetti v.

9

Stone Co., 396 Mass. 1, 10, 483 N.E.2d 793 (1985).

Here, plaintiff's theory is that defendants controlled their independent
contractors because they retained control over the course.  As evidence of "control,"
plaintiff points to TPC Network's operations manual, which states that "[s]afety policies
and practices outlined in the safety section of this manual that are in effect for normal
golf course maintenance operations remain in effect for tournament operations."
Docket # 58-9, Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. Judgment, Ex. 8, Operations
Manual, Section 9.10.  Defendants were therefore "responsible for ensuring that all of
their policies and procedures were implemented by all entities operating on the golf
course during the Tournament."  Docket # 58-1, Pl.'s Mem. in Opp. to Defs.' Mot. for
Summ. Judgment at 17.

Boilerplate safety language in an operations manual is insufficient to
demonstrate that these defendants retained control over the premises, and it certainly
does not suffice to demonstrate their control over Restaurant Associates or Consla.

Finally, plaintiff contends that defendants were negligent in entrusting the cart to
Restaurant Associates and Consla.

However, the record does not support the underlying premise that these
defendants entrusted the cart to anyone.  As noted above, IMG leased the cart from
Club Car, and then rented it to Restaurant Associates.  Restaurant Associates, in turn,
entrusted the cart to Consla.  Nor is there any evidence that these defendants had
actual knowledge of Consla's alleged unfitness to drive the utility cart.  Accordingly, this
claim is dismissed.

## 2.    Vicarious Liability

Plaintiff also contends that these defendants are vicariously liable for Consla's

actions under a respondeat superior theory.

The doctrine of respondeat superior provides that "an employer ... should be

held vicariously liable for the torts of its employee ... committed within the scope of

employment." Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 319-320 (2002).

However, the general rule is that an employer who hires an independent contractor is

not liable for the independent contractor's negligent acts.  See Fireman's Fund Ins. Co.

v. Falco Const. Corp., 493 F. Supp.2d 143, 146 (D. Mass. 2007);  see also

Restatement (Second) of Torts § 409.  The key inquiry, then, is whether an employer-

employee relationship exists.  The test is whether "one has a right to control the

individual's work performance."  National Assn. of Govt. Employees v. Labor Relations

Commn., 59 Mass. App. Ct. 471, 474 (2003).  "If in the performance of his work an

individual is at all times bound to obedience and subject to direction and supervision as

to details, he is an employee; but if he is only responsible for the accomplishment of an

agreed result in an agreed manner, he is an independent contractor."  Brigham's Case,

348 Mass. 140, 141-142 (1964).

"The test of vicarious liability is still one of control or right of control by the

employer over the actual conduct by the [employee] alleged to be negligent."  Chase v.

Independent Practice Ass'n Inc., 31 Mass.App.Ct. 661, 665, 583 N.E.2d 251, 254

(Mass.App.Ct. 1991).

The record contains no evidence that the owner, operator, or sponsors had the

11

ability to control Consla.  To the contrary, Consla testified during deposition that he reported to an employee of IMG — not any of the TPC entities or the PGA Tour — during the tournament.  (See Docket # 50-13, Statement of Material Facts filed by Defendants, Ex. 12, Deposition of Robert Consla at 44-45.)

Accordingly, the motion of the PGA Tour, TPC Network, TPC Boston, and TPC Massachusetts for summary judgment is allowed.

**B.      IMG's Motion for Summary Judgment (Docket # 59)**

Plaintiff charges that IMG, as the operator of the golf course on the day of the tournament, was similarly negligent (1) in failing to exercise reasonable care in the operation, maintenance, and inspection of the golf course; (2) in hiring agents, specifically Consla; (3) in supervising agents; (4) in entrusting the utility cart to agents such as Consla; and (5) that it is vicariously liable for both Consla's and Restaurant Associates' actions under the doctrine of respondeat superior.

**1.      Direct Negligence**

**a.      Negligent Maintenance of the Golf Course**

Plaintiff's theory is that IMG was responsible for maintenance of the path under the Facilities Management Agreement but did not, in dereliction of that responsibility, ensure that it was free from obstructions.  It also did not rope off impassable areas, and it failed to warn plaintiff of unsafe conditions.

Moreover, plaintiff contends that as manager of the tournament, IMG was responsible for enforcing the safety rules.  Plaintiff points to testimony by an IMG employee, tournament director Eric Baldwin, who testified that if he had seen people

riding on the back of the utility cart, he would have stopped it.  <u>See</u> Docket # 68-15,

Pl.'s Mem. of Law in Support of Her Objection to Defs.' Mot. for Summ. Judgment, Ex.

14, Deposition of Eric Baldwin at 101-102.  Plaintiff also argues that IMG did not do

anything to ensure that the people IMG hired knew or enforced the rules.

However, the Facilities Management Agreement provides only that IMG had

exclusive use of the facility with respect to "play or practice" and then only on the actual

golf course itself.  <u>See</u> Tournament Facilities Agreement ¶ 3.1(b).  It did not impose on

IMG responsibility for the condition of the entire facility.  Moreover, at the time the

incident occurred, IMG was not in control of the cart which was operated by Restaurant

Associates.

### b.    Negligent Maintenance of the Utility Cart

To the extent plaintiff also contends that the utility cart was itself defective and/or

that IMG was negligent in maintaining the utility cart, its argument is defeated by the

lack of evidence of defect and of IMG's responsibility for the cart.

### c.    Negligent Hiring, Supervision, and Entrustment

Plaintiff contends that IMG is liable for hiring Restaurant Associates, who in turn

negligently hired Consla.  IMG did hire Restaurant Associates.  But there is no

evidence that IMG had any role in hiring Consla.

Any claim of negligent supervision by IMG of its independent contractors,

namely, Restaurant Associates, fails for lack of evidence that IMG had any control over

either Restaurant Associates or Consla.

Similarly, any claim of negligent entrustment of the carts to Restaurant

13

Associates and Consla fails because there is no showing that Restaurant Associates was not competent to use the carts.  Nor is there any evidence that IMG had actual knowledge of Restaurant Associates' or Consla's unfitness to drive the utility cart.

### 2.   Vicarious Liability

Next, plaintiff also contends that IMG is vicariously liable for Consla's actions under a respondeat superior theory.

As noted above, the test for vicarious liability is whether IMG had the ability to exert control over Consla.  It is undisputed that he was employed by Restaurant Associates.  Plaintiff contends that the terms of the Catering Agreement provide that IMG had control over employees of Restaurant Associates.  See Docket # 68, Pl.'s Mem. of Law in Support of Her Objection to Defs.' Mot. for Summ. Judgment, Ex. 10, ¶ 3(g), Catering Agreement (Restaurant Associates "shall comply with any and all instructions given by [IMG] in relation to health and safety.").  However, this provision of the Catering Agreement pertains to conditions of the catering area and access ways and relates to the handling of food.  It does not demonstrate that IMG could control an individual employee.

### III.   Conclusion

For the reasons discussed above, defendants PGA Tour, TPC Network, TPC Boston, and TPC Massachusetts' motion for summary judgment (Docket # 48) is ALLOWED.  Defendant IMG's motion for summary judgment (Docket # 59) is ALLOWED.

14

| February 24, 2010 | /s/Rya W. Zobel |
| :---: | :---: |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |